**********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Accordingly, the Full Commission affirms, with some modifications, the Opinion and Award of the Deputy Commissioner.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff and Brooksdale Agri-Resources, Inc. on September 1, 2004.
5. Plaintiff was involved in an automobile accident arising out of and in the course of his employment with defendant-employer on September 1, 2004.
6. Copies of the medical records and reports of plaintiff's health care providers may be introduced into evidence without further proof of authenticity.
7. Copies of the documents filed with the Industrial Commission pertaining to this matter may be introduced into evidence without further proof of authenticity.
8. The parties set out the following issues:
 • To what extent was the plaintiff temporarily totally disabled; to what extent was the plaintiff permanently partially disabled;
 • Is plaintiff entitled to have medical bills paid;
 • Should defendant be assessed a penalty for failure to carry workers' compensation insurance;
 • Whether plaintiff's heart condition and resulting medical treatment is related to his work accident on September 1, 2004; *Page 3 
 • Whether plaintiff was disabled from his work accident on September 1, 2004 and, if so, to what extent; and what benefits, if any, is plaintiff entitled to under the Act as a result of his work accident on September 1, 2004?
9. Following the hearing, the parties stipulated to an average weekly wage of $482.37 and a compensation rate of $321.26.
 **********
The following were marked and received into evidence as:
 EXHIBITS
1. Stipulated Exhibit No. 1 — Medical records;
2. Stipulated Exhibit No. 2 — Form 22; and
3. Stipulated Exhibit No. 3 — Driver's duty status record.
 **********
The following were marked and received into evidence as:
 EXHIBITS IN PH-1320
1. Stipulated Exhibit No. 1 — Brooksdale Articles of Incorporation;
2. Stipulated Exhibit No. 2 — 2003 ESC records;
3. Stipulated Exhibit No. 3 — NCIC coverage screen;
4. Stipulated Exhibit No. 4 — BAR Corp. Articles of Incorporation;
5. Stipulated Exhibit No. 5 — List of employees; and
6. Stipulated Exhibit No. 6 — Certificates of insurance (2).
 **********
Based upon the competent evidence of record, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 57 years old and had worked continuously as a truck driver for various trucking companies since 1972.
2. Plaintiff began working for defendants as a truck driver in April 2004. In that capacity, plaintiff was required to undergo a physical examination every six to seven months, and according to his testimony, he had complied with this requirement since 1972. Plaintiff testified that his last physical examination prior to the accident that is the subject of this claim was two to three months before becoming employed by defendant. However, plaintiff produced no records to corroborate his testimony or the results of any of the examinations.
3. On September 1, 2004, plaintiff was driving back from Conley, Georgia with a load of shingles when he was involved in a motor vehicle accident on Interstate 85 in Spartanburg, South Carolina. Due to some police activity ahead, plaintiff had slowed to approximately 30 miles per hour in the center lane when an emergency vehicle came alongside him in the right lane, swerved to the left in front of plaintiff and stopped, causing plaintiff to collide with the emergency vehicle.
4. At the hearing before the Deputy Commissioner, plaintiff testified that he was thrown forward on impact, but struck nothing within the truck other than the seat belt he was wearing. Plaintiff described the seat belt as a shoulder harness that came from the left side of his truck by the door, crossed the center of his chest, and latched to the right of him down by his seat. There was no lap belt in the truck. Plaintiff described his contact with the seat belt as a "hard jerk."
5. As he testified, plaintiff did not seek medical attention following the accident that occurred around 10:10 p.m. on September 1, 2004 and spent the night in a motel. He returned to *Page 5 
North Carolina the next day and did not seek medical attention until September 7, 2004, six days after the accident. On September 7, 2004, plaintiff presented to the emergency department of Franklin Regional Medical Center with complaints of moderate leg, back and neck pain. While plaintiff testified that he was also experiencing chest pain, shortness of breath, and fatigue following the accident, the emergency room records do not reflect any such complaints. X-rays of plaintiff's cervical and lumbar spine were normal, but an EKG was ordered due to plaintiff's slow heart rate. Plaintiff's EKG demonstrated "marked sinus bradycardia with 1st degree AV block; Right bundle branch block; Left anterior fascicular block."
6. Plaintiff received no additional medical treatment for his neck or back since the emergency room visit on September 7, 2004. However, due to his slow heart rate and EKG readings, plaintiff was referred to Dr. Jack Newman, a cardiologist, for placement of a 24-hour halter monitor. When Dr. Newman received plaintiff's monitor readings on September 8, 2004, he noted that plaintiff had a high degree heart block and an appointment was made for plaintiff to see Dr. Newman on September 10, 2004. At this examination, plaintiff reported persistent fatigue and shortness of breath since his motor vehicle accident, but denied any lightheadedness. Dr. Newman performed an echocardiogram that confirmed the monitor readings and plaintiff was diagnosed with Mobitz Type II heart block that Dr. Newman described as an intermittent short circuit of the electrical system of the heart where the signal from the pacemaker of the heart intermittently gets through to the main pumping chambers.
7. Dr. Newman subsequently referred plaintiff to Dr. Randolph Cooper, a physician who is board certified in cardiology and electrophysiology, for installation of a pacemaker implant. On September 14, 2004, Dr. Cooper implanted a dual chamber pacemaker in plaintiff. Plaintiff testified that since the implantation of the pacemaker, his heart rate had returned to *Page 6 
normal and he felt better. Plaintiff returned to the trucking occupation with Huss Trucking Company in Chase City, Virginia in March 2005 earning greater wages than he had earned while in the employ of defendants. Plaintiff testified that he is able to perform his driving duties and all of the physical duties of his new job.
8. Although plaintiff testified that prior to the accident on September 1, 2004, he had neither experienced nor been diagnosed with fatigue, shortness of breath, lightheadedness or high blood pressure, plaintiff produced no records to corroborate his testimony. Plaintiff denied having high blood pressure and was unable to explain why Dr. Newman's medical records indicated a "probable history of hypertension." Plaintiff attributes his heart block to the motor vehicle accident of September 1, 2004, and his impact with the seat belt during the collision.
9. On the issue of causation, responding to a hypothetical question posed by plaintiff's counsel, Dr. Jack Newman opined that it was "pretty likely" that the accident caused plaintiff's heart block. However, Dr. Newman admitted that his opinion was based solely on the temporal relationship between plaintiff's accident and his symptoms of fatigue and shortness of breath. Dr. Newman admitted that without a prior electrocardiogram it was "impossible" to know what caused the condition or whether plaintiff had a heart block before the accident.
10. When confronted with the emergency room records that indicated plaintiff's symptoms of fatigue and shortness of breath began sometime after September 7, 2004, Dr. Newman testified that it is less likely that the accident caused the heart block because one would not expect it to develop six days later.
11. Dr. Newman further admitted that there was no objective medical evidence to show that plaintiff sustained a contusion significant enough to damage the conduction system of his heart. Although it was possible that the seat belt was just at the right position when it *Page 7 
tightened to cause trauma to plaintiff's electrical system, Dr. Newman opined that this was just speculation.
12. Dr. Randolph Cooper also issued a causation opinion in this case. In his deposition testimony, Dr. Cooper initially opined that it was "more likely that the motor vehicle accident resulted in contributing to his heart block." Dr. Cooper admitted, however, that his opinion was also based on the temporal relationship between plaintiff's accident and his onset of symptoms. Moreover, he admitted that there was no objective medical evidence to support trauma-induced heart block.
13. Dr. Cooper later opined that it was much less likely that the accident on September 1, 2004 contributed to plaintiff's heart block if plaintiff's symptoms of shortness of breath and fatigue did not occur until sometime after September 7, 2004, as the Franklin Regional Medical Center emergency room notes indicate. Furthermore, Dr. Cooper opined that the fact plaintiff did not have any broken bones, a broken sternum or even bruising makes it less likely that the accident contributed to the heart block but he still could not entirely rule it out.
14. Based on the equivocal, temporally based nature of the testimony of Drs. Newman and Cooper, the Full Commission finds that neither doctor's opinion sufficiently establishes a causal connection between plaintiff's vehicular accident on September 1, 2004 and his subsequent heart block.
15. Dr. Virgil Wynia, a cardiologist conducted a thorough review of plaintiff's medical records, the hearing transcript and the depositions of Drs. Newman and Cooper. Dr. Wynia testified that he treats approximately ten patients a year who have had heart block. Dr. Wynia said that the most common causes of heart block that he sees are related to coronary disease and fibrosis of the conduction system, which is a degenerative condition where the *Page 8 
electrical tissues of the heart are replaced by scars. Although Dr. Wynia testified that it is reported that trauma can cause heart block, neither he nor his eight partners have ever seen it and it is "extremely rare."
16. Dr. Wynia opined that it was unlikely that the automobile accident in which plaintiff was involved on September 1, 2004, caused his heart block and that the block was, instead, the result of degenerative fibrosis. In support of his opinion, Dr. Wynia noted that plaintiff exhibited no external signs of trauma to his chest and no internal damage to his heart at the emergency room visit on September 7, 2004 or during his subsequent diagnostic test on September 10, 2004. Instead, plaintiff's electrocardiogram demonstrated widespread, diffuse damage to plaintiff's conduction system, which, in Dr. Wynia's opinion, could not have been caused by the minimal trauma associated with striking a seat belt at a slow speed. Dr. Wynia opined that most cases of heart block from trauma are associated with severe trauma where the sternum is fractured and there is evidence of a myocardial contusion manifested by electrocardiogram changes, enzyme changes or changes on the echocardiogram.
17. Dr. Wynia opined, as did Drs. Newman and Cooper, that since plaintiff's symptoms appeared one week after the accident, it was less likely that the accident was the direct cause of plaintiff's heart block.
18. Dr. Wynia read plaintiff's electrocardiogram and observed that there was some right bundle-branch blockage and a left anterior block. Based on these findings, he concluded that the damage to plaintiff's conduction system had been there before the accident but had been asymptomatic. Dr. Wynia opined that plaintiff had the development of a gradual disease in his conduction system and that it manifested itself after the accident but that it was impossible to say *Page 9 
that the accident traumatized his conduction system and caused the heart block. Moreover, he was unable to state whether the accident somehow aggravated or activated the condition.
19. Dr. Wynia observed that there were several different occasions when plaintiff manifested high blood pressure, which suggested to Dr. Wynia that plaintiff has hypertension. Dr. Wynia testified that plaintiff had several high readings: 207/104, 211/95, 220/129, and the highest one 227/135. Dr. Wynia opined that while elevated readings can be attributable to anxiety, he felt plaintiff's readings were too high to be related to just stress. According to Dr. Wynia, hypertension can contribute to the development of heart block.
20. Plaintiff produced no medical records to corroborate his own testimony that he did not have prior hypertension.
21. The Full Commission finds that there is insufficient medical evidence to establish that plaintiff's accident on September 1, 2004, caused his subsequent heart block.
22. Defendant had a workers' compensation insurance policy that expired on May 1, 2003 and has provided no proof of coverage beyond that date. Defendant had three or more employees from May 2, 2003 through December 31, 2003 and from January 2, 2004 through at least October 2, 2004. This amounts to 517 days without workers' compensation insurance to cover its employees as required by the Act. Defendant stopped operating the business in October 2004 and dissolved the corporation in May 2005.
23. The Full Commission finds that defendant was subject to the Act on September 1, 2004 but did not have workers' compensation insurance.
24. The Full Commission further finds that Earl H. Brooks, Jr., as president and owner of defendant-employer had the ability and authority to bring the company into compliance with the Act and neglected to do so. *Page 10 
 **********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff was involved in an automobile accident arising out of and in the course of his employment with defendant on September 1, 2004. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to prove by the greater weight of the evidence that his accident on September 1, 2004 caused or accelerated his subsequent heart condition, specifically his heart block. Plaintiff's claim related to his heart condition, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff failed to prove that he currently suffers from any disability that impairs his wage-earning capacity and that is related to his September 1, 2004 accident or any work-related injury or condition. N.C. Gen. Stat. § 97-2(9).
4. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
5. Any person who had the ability and authority to bring his or her business into compliance with N.C. Gen. Stat. § 97-93 and willfully fails or neglects to do so, may be assessed a penalty equal to 100% of the amount of compensation due defendant's employees injured during the time his/her business failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d). *Page 11 
6. Earl H. Brooks, Jr., as president and owner of defendant had the ability and authority to bring defendant into compliance with the Act and neglected to do so.
 **********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits for his heart condition is denied.
2. Pursuant to N.C. Gen. Stat. § 97-94(b), a penalty of $50.00 per day is assessed against defendant Brooksdale Agri-Resources, Inc. for failing to secure workers' compensation insurance from May 2, 2003 through December 31, 2003 and from January 2, 2004 through at least October 2, 2004. This amounts to 517 days without proof of workers' compensation insurance for a total penalty of $25,850.00. A check in this amount shall be made payable to the North Carolina Department of Commerce/Industrial Commission with a notation that it is for a penalty and sent within 45 days of the date of this Opinion and Award to Ms Caroline Wall at the North Carolina Industrial Commission, 4340 Mail Service Center; Raleigh, NC 27699-4340.
3. Each party shall bear its own costs.
This the ___ day of June 2007.
S/______________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ *Page 12 
LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1